Railroad *v.* Milam.

L. & N. R. R. Co. *v.* MILAM Ex'r.

RAILROADS. *Speed of trains.* It was error to charge that if the train was running at such a speed that it could not be stopped within the distance the head-light would discover objects upon the said road, the jury might find the company guilty of recklessness, notwithstanding all the prescribed precautions were observed. There is no law prescribing the rate of speed at which trains should run. The question of recklessness or excessive speed is one to be determined by all the facts and circumstances at the time, and not by the arbitrary rule suggested as to the distance an obstruction could be seen by aid of the head-light.

FROM HENRY.

Appeal in error from the ,Circuit Court of Henry county. FITZGERALD WILLIAMS, Sp. J.

COLE & SWEENEY for Railroad.

T. C. FRYER for Milam.

FREEMAN, J., delivered the opinion of the court.

This is an action brought to recover damages for killing four mules by a freight train on defendant's road. The defendant plead not guilty, and a special

plea in confession and avoidance. in which it is ad-
mitted the mules were killed,. but it is averred " that
the killing could not be avoided, because the agents
of defendant did all they could, or that was in their
power to do, and everything that could be done to
avoid the killing that is required by law.",

On these issues the case was submittied to a jury,
who found for plaintiff the value of the stock.

The facts, as presented by plaintiff, showed that the
mules were grazing near the road, at about 9 o'clock
at night, at a point above they might have been seen
in daylight, at least six hundred yards—it being a
level grade—just at the end of a steep grade over
which the cars had come. It is shown that the mules
started at the approach of the train, and ran down
the side of the track, near the end of the cross-ties,
for eighty yards, and then jumped on the track, and
the two youngest ran one hundred yards, before being
struck, the two older and stronger, ·some fifteen or
twenty yards further. The proof of plaintiff is, that
from the appearance of the tracks, they were probably
running at a rate of ten to fifteen miles per hour,
and as there was a fence on one side of them, com-
pelling them to run near the track, we assume they
naturally ran at about their best speed. The plain-
tiff's proof tended to show that the train was running
at an unusually rapid speed, while the testimony of
the engineer and employes of the road is, that it was
running at only the rate of from ten to twelve miles
per hour—fifteen being the limit prescribed by the com-
pany for freight trains at that time.

The engineer on the train at the time, says he was on the lookout, and only saw the mules when they jumped on the track about twenty feet ahead of the engine, and that he immediately whistled down brakes, gave the cattle alarm and reversed his engine—in fact, did everything to prevent the accident—and that the train could have been stopped at one hundred and fifty yards.

It is evident from these facts, that the verdict of the jury is well warranted on the ground of negligence, as it is certain that if there had been a proper look out, as required, the mules could have been seen, as they ran eighty yards down the side of the track, and were thus, under our decision, an obstruction appearing on the track, though not literally upon the road-bed. It is equally evident, that if they had been seen thus running, the speed of the train could have been checked, so that at the rate the mules were running, they would certainly have escaped—taken in connection with the theory of the defense in proof, that the train was slackened in speed by climbing the steep grade just passed over.

On this view of the case, it is clear there should be no reversal, unless the law has been charged erroneously in a material matter bearing on the state of facts shown in the proof, so that the jury might have been misled.

The only point on which his Honor's charge seems fairly subject to criticism, is in reference to the rate of speed at which the train was running. Plaintiff's proof tended to show that it was from twenty-five to

to thirty-five miles per hour—the defendants, as we have said, from ten to twelve.

His Honor stated to the jury, after giving the assumed facts, that if at the rate of speed said train was running, it could not have been stopped within the distance at which the head-light upon the locomotive would discover objects upon the road, or obstructions upon the track, and you should be of opinion from these facts, that defendants were guilty of recklessness in so running, the defendants would be liable, notwithstanding all the prescribed precautions were observed.

We have said, in several cases, that there was no law prescribing the rate of speed at which trains should be run, either freight or passenger. Nevertheless, it is evident there may be cases in which the speed taken in connection with the other circumstances existent at the time, may be an element of inquiry, on the question of negligence in the use of machinery of such tremendous power for mischief, by the parties having it under control. Independent of our statutory regulations, the principle applicable to this question is, that the company must so enjoy their own rights, as that the rights of others shall not be infracted, nor injury done to person or property. When this can be avoided by the exercise of the utmost prudence and care.

Our statutory regulations but embody this principle, and it underlies them all. The principle applicable to this question is stated with reasonable accuracy by the Court of Appeals of New York, in the case of

*Massoth* v. *Delaware and Hudson Canal Company*, 64 N. Y., 531, that "where there is no statutory regulations fixing the rate of speed of trains, it is a question of fact, whether the rate of speed was excessive or dangerous in that locality, and if so found by the jury, and such excessive rate caused the injury, the road would be liable for the damages." See also, *Wilds* v. *H. R. R. R. Company*, 29 N. Y.

His Honor, the circuit judge, has left it to the jury to say, whether the speed being such as that the train could not be stopped within the distance the head-light would discover objects ahead, or obstructions on the track, was not recklessness on the part of the defendant, notwithstanding all the precautions required by the statute · were observed.    In this, we think he erred, as the fact that the train could not be stopped within the distance mentioned, is not the true test of over speed, or recklessness—nor one from which a jury could be authorized to infer the fact of recklessness.    The question of reckless or excessive speed, is one to be determined by all the facts and circumstances at the time, and not by the arbitrary rule suggested as to the distance an obstruction could be seen by the aid of the head-light.

The instruction asked by the defendant was equally objectionable, however, as it went on the assumption that the speed might at all times be such as the company might deem proper to meet the wants of commerce.    This would leave railroad commissioners independent of all restraint or rule, and to be governed solely by their own judgment, regardless of danger to

persons or property.    No such rule can ever be sound.

For the error indicated in the charge, the judgment must be reversed and case remanded.