Ann D. **ELLITHORPE**

v.

**FORD MOTOR COMPANY et al.**

Supreme Court of Tennessee.

Sept. 17, 1973.

**518**

Dennis L. Tomlin, Nashville, for plaintiff-appellant.

John K. Maddin, Jr., Nashville, for Ford Motor Co.

W. W. McNeilly, Jr., Nashville, for George Busby Ford, Inc., and Bob Frensley Ford, Inc.

## OPINION

McCANLESS, Justice.

This is a suit for the recovery for injuries to the plaintiff, Ann D. Ellithorpe, which she incurred after her automobile collided with another vehicle. The plaintiff filed suit against the defendants, the manufacturer and the sellers of the automobile, a 1969 Ford Falcon, seeking $12,000.00 damages. The defendants filed motions to dismiss in accordance with Section 12.02(6) of the Rules of Civil Procedure on the ground that the complaint had failed to state a claim upon which relief could be granted, alleging that it shows on its face that complainant's own negligence in driving her automobile into the rear of another stopped automobile was the sole and proximate cause of her injuries and damage. The Circuit Court after oral argument granted the motion to dismiss and, thereafter, denied the plaintiff's motion for a new trial. The plaintiff has appealed seeking a reversal of the judgment of the Circuit Court and the remand of the case for a trial on the merits.

The plaintiff filed a number of assignments of error. The first, and to which the others are corollary, is that the trial court erred in dismissing the cause on motion to dismiss and without a trial on the merits. We sustain this assignment for the reasons we shall set forth in this opinion.

The complaint charges that the plaintiff bought a new Ford Falcon automobile from the defendant, George Busby Ford, Inc., later acquired by defendant, Bob Frensley Ford, Inc., on November 18, 1969. The hub of the steering wheel was padded but in the middle of the padding the manufacturer, the defendant, Ford Motor Company, had inserted a plastic Ford emblem, from which protruded three sharp prongs. The emblem with the prongs extended above the surface of the padding. On June 21, 1971, while the plaintiff was driving her car in the rain and on a wet road, it collided with the rear of another automobile which had stopped in front of her. She was wearing her lap seat belt around her hips. The impact caused plaintiff's upper body to go forward resulting in injuries when her face struck the insignia on the steering wheel.

Defendants' motion to dismiss was based on the following statement, set forth in the complaint:

"On or about the 21st day of June, 1971, the plaintiff was driving her 1969 Ford Falcon north on Gallatin Road, and as she reached the intersection of Gallatin Road and Haysboro Drive, another vehicle stopped or was stopped in front of the plaintiff intending to turn left. The road was wet and it was raining. The plaintiff did not realize until it was too late that the other automobile was stopped in front of her, and her automobile collided with the rear of the other automobile."

We note first that it is questionable whether the plaintiff admitted contributory negligence in her complaint. Reasonable minds could differ as to whether her con-

duct was negligent. See Ewing v. Birthright, 60 Tenn.App. 454, 448 S.W.2d 71 [1969]. The facts averred are not sufficient to raise a presumption of contributory negligence to the exclusion of any other reasonable inference. McCampbell v. Central of Georgia Ry. Co., 194 Tenn. 594, 253 S.W.2d 763 [1952]. The question was one for the jury to decide.

Defendants contend that the plaintiff's conduct bars recovery (1) on the basis of contributory negligence, if plaintiff should prevail on the ground of negligence; or (2) on the basis of abnormal use and assumption of risk, if plaintiff should prevail on the ground of strict liability in tort.

■■ We do not get to the negligence count, since this a case governed by the law of strict liability in tort. Tennessee has adopted the strict liability rule set forth in Restatement (Second) of Torts, Sec. 402A [1965]. Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 [1966]; Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430 [1967]. The doctrine has been applied to automobiles. Carney v. Ford Motor Co., CCH Products Liability Reports, para. 6306 [Tenn.App.1970]. The text of Section 402A is:

> "402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

This case involves the liability of a manufacturer for so-called "second accident"

injuries; those which result from bodily contact with the interior of an automobile after the initial impact. Defendants set up as a defense a form of contributory fault known as abnormal use, or misuse. The thrust of this argument is that collisions are not within the intended and normal use of an automobile. Holding the manufacturer liable for injuries resulting from an accident which he did not cause would unjustly force him to build "accident-proof" automobiles. Defendants rely on cases of which the leading one is Evans v. General Motors Corp., 359 F.2d 822 [7th Cir. 1966]. For a list of cases following the *Evans* rule, see Noel, "Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk," 25 Vand.L.Rev. 93, n. 21 at 98 [1972]. The *Evans* rule, however, has come under sharp criticism. See 118 U. of Pa.L.Rev. 299 [1969]; 80 Harv. L.Rev. 688 [1966]; Prosser, The Law of Torts, Section 96 at 646 [4th ed. 1971]; and see commentary cited in Dyson v. General Motors Corp., 298 F.Supp. 1064, n. 4 at 1067 [E.D.Pa.1969].

■ We reject the *Evans* rule and adopt the reasoning of Larsen v. General Motors Corp., 391 F.2d 495 [8th Cir. 1968]. The court there held that collisions are clearly foreseeable by the manufacturer and that he therefore has a duty to minimize the harm of inevitable accidents by utilizing reasonably safe design. This does not require construction and design of an automobile that will be absolutely safe in a collision. It does require the manufacturer to design an automobile which, in the event of an accident, is "as safe as is reasonably possible under the present state of the art." Larsen v. General Motors Corp., supra. We agree with defendant that abnormal use of a product is generally a defense in strict liability cases. Higgins v. Paul Hardeman Inc., 457 S.W.2d 943 [Mo.App. 1970]. However, the use of the product will not bar recovery if it is reasonably foreseeable by the manufacturer. Thomas v. General Motors Corp., 13 Cal.App.3d 81, 91 Cal.Rptr. 301 [1970]; McLaughlin v.

Sears, Roebuck & Co., 281 A.2d 587 [N.H.1971]; Noel, supra, 25 Vand.L.Rev. at 96; Prosser, The Law of Torts, Sec. 102 at 669. The plaintiff here was using her car for transportation in the environment in which it was intended to be used and during such use an accident occurred. As the court in the *Larsen* opinion noted,

> "Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable.
>
> . . . . . .
>
> "The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and the public and these realities should be squarely faced by the manufacturer and the courts." Larsen v. General Motors Corp., supra.

■ Statistics indicate that between one-fourth and two-thirds of all automobiles during their use are eventually involved in an accident producing injury or death. O'Connell, "Taming the Automobile," 58 Nw.U.L.Rev. 299, 348 [1963], cited in Larsen v. General Motors Corp., supra. The manufacturers have acknowledged the foreseeability of collisions in public statements. Larsen v. General Motors Corp., supra, n. 7, 391 F.2d at 504. Generally, the question of foreseeability of use is one for the jury, but courts will decide it as a matter of law when reasonable minds could not disagree. McLaughlin v. Sears, Roebuck & Co., supra; Johnson v. Standard Brands Paint Co., 274 Cal.App.2d 331, 79 Cal.Rptr. 194, 198–199 [Cal.App. 1969]; Lifritz v. Sears, Roebuck & Co., 472 S.W.2d 28 [Mo.App.1971]; 2 Harper & James, The Law of Torts, Sec. 28.6 at 1546 [1956]; 13 A.L.R.3d 1057, 1088.

Our holding is in keeping with the policy considerations which underlie the doctrine of strict liability in tort. One of these is to encourage manufacturers to place only safe products on the market. 33 Tenn.L.Rev. 341, 346 [1966]. That policy is not carried out by court decisions which would hold the manufacturer liable for design defects which cause accidents, but arbitrarily absolve him of liability for injuries which his defects in design cause after the accident occurs. Larsen v. General Motors, supra 391 F.2d at 502. To so rule would be to allow the manufacturer to emphasize style over safety in design.

The *Larsen* decision was based on negligence rather than strict liability, and as such has been followed in a line of cases listed in Noel, supra, 25 Vand.L.Rev., n. 21 at 98. The *Larsen* court noted, however, that the same reasoning would apply to strict liability in states where that doctrine had been adopted. Larsen v. General Motors Corp., supra, n. 5, 391 F.2d at 503. Cases applying the *Larsen* rule in strict liability jurisdictions include Badorek v. General Motors Corp., 11 Cal.App.2d 902, 90 Cal.Rptr. 305 [1970]; Dyson v. General Motors Corp., supra; Engberg v. Ford Motor Co., 205 N.W.2d 104 [S.D.1973]; Cronin v. J. B. E. Olson Corp., 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 [1972]; Passwaters v. General Motors Corp., 454 F.2d 1270 [8th Cir. 1972].

■■ Defendants also contend that, at the time of the collision, plaintiff was wearing her seat belt but not her shoulder strap. This, they contend, is an abnormal use of the automobile. We notice, however, that the complaint does not aver that plaintiff's car was equipped with a properly-functioning shoulder strap. Moreover, the Tennessee legislature has foreclosed this defense with the proviso in Section 59–930, T.C.A., which provides that:

> ". . . . in no event shall failure to wear seat belts be considered as contributory negligence, nor shall such failure to wear said seat belt be considered in mitigation of damages on the trial of any civil action."

The failure of its consumers to wear their safety belts is reasonably foreseeable by the manufacturer. Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 [1968].

■ Defendants further contend that recovery is barred, if not on the basis of misuse, then on the basis of some other form of contributory fault. We first dispense with the notion that the plaintiff's negligent driving, if so found, bars recovery. Ordinary negligence, defined generally as the failure to exercise the care of a reasonably prudent man, is not a proper defense to strict liability actions. DeFelice v. Ford Motor Co., 28 Conn.Sup. 164, 255 A.2d 636 [1969]; Williams v. Brown Manufacturing Co., 45 Ill.2d 418, 261 N.E.2d 305 [1970]; Williams v. Ford Motor Co., 454 S.W.2d 611 [Mo.App.1970].

The reasons for this rule are two-fold.

■ First, allowing ordinary negligence to bar strict liability would defeat the purposes for which the theory of strict liability was created. See Prosser, The Law of Torts, Sec. 79 at 522. The manufacturer is held strictly liable because he can more easily spread the risk of loss caused by his products, and because to do so encourages him to take greater care in designing and manufacturing his products. Ford Motor Co. v. Lonon, supra 398 S.W. 2d at 250; Restatement (Second) of Torts, Sec. 402A, comment c. As our Court of Appeals has said:

"Obviously when our Supreme Court first adopted the doctrine of strict liability in tort (citation omitted), that Court meant for the law applicable to cases brought under that doctrine to be different from the law applicable to a lawsuit based on ordinary negligence. Sound reason therefore dictates those acts of negligence which consist merely in a failure to discover the defect or guard against the possibility of its existence should not be available as a defense to an action based on strict liability in tort. To hold otherwise would appear to de-

feat the entire doctrine of strict liability and reduce the action brought under that doctrine to one based on ordinary negligence." Carney v. Ford Motor Co., supra.

The courts do recognize, however, that plaintiffs can conduct themselves in such a way as to defeat recovery. Regardless of which label is used, "contributory negligence" or "assumption of risk", the courts have generally held that ordinary lack of care is not a defense, while "voluntarily and unreasonably proceeding to encounter a known danger" is a defense. Williams v. Brown Manufacturing Co., supra 261 N.E. 2d at 309; Prosser, The Law of Torts, Sec. 102 at 670; Restatement (Second) of Torts, Sec. 402A, comment n at 356. As the court said in Carney v. Ford Motor Co.:

"We . . . conclude that when a plaintiff, with knowledge of the defect, uses the product in such a manner as to voluntarily and unreasonably encounter a known danger, that act may be plead as a defense to an action based on strict liability in tort. We do not deem it determinative of the availability of this defense whether it be called negligence, contributory negligence or assumption of risk. It is more a matter of the unreasonableness of permitting a plaintiff to deliberately put in motion a known danger and attempt to profit thereby." Id. at 9727.

Likewise, the Restatement (Second) of Torts, Sec. 496A, comment d at 563, states that the *only* form of contributory negligence which can be used as a defense in strict products liability cases is that known as "assumption of risk" as defined in Carney v. Ford Motor Co., supra. We agree.

■ Second, Tennessee courts have never allowed contributory negligence as a defense to conduct amounting to gross negligence, or to conduct which is culpable regardless of the care exercised by the defendant. Generally, a plaintiff whose ordi-

nary negligence proximately causes the injury cannot recover from an ordinarily negligent defendant. See Donaho v. Large, 25 Tenn.App. 433, 158 S.W.2d 447 [1942]. However, ordinary negligence on the part of the plaintiff is not a defense to the gross negligence of the defendant. Stinson v. Daniel, 220 Tenn. 70, 414 S.W.2d 7 [1967]. In general, recovery is not barred whenever the defendant's negligence is of a "higher degree" than that of the plaintiff. Fontaine v. Mason Dixon Freight Lines, 49 Ten.App. 598, 357 S.W.2d 631 [1961]. The impropriety of the defense is even clearer in cases in which the conduct of the defendant is so wilful that it is no longer based upon negligence, e. g., when he knowingly harbors a vicious animal. Hood v. Waldrum, 58 Tenn.App. 512, 523, 434 S.W.2d 94 [1968]. Speaking in language pertinent to products liability law, the Court of Appeals has held:

"The law does recognize the distinction between the maintenance of a condition which is lawful and inherently dangerous to others, however much care may be exercised, and a condition rendered wrongful and dangerous only by reason of negligence. In the latter class of cases, contributory negligence bars a recovery, whereas, generally, to be available as a good defense in the former, the conduct of the injured persón must have been tantamount to an indifference to consequences. This, upon the principle of *volenti non fit injuris*. (i. e., assumption of risk) (parentheses added)." Brown v. Barber *et al*, 26 Tenn.App. 534, 174 S.W.2d 298 [1943], cited with approval in Stinson v. Daniel, supra.

The conduct giving rise to strict products liability is likewise not based upon negligence, and the defendant may be liable without proof of a lack of care. Restatement (Second) of Torts, Sec. 402A, comment m at 355. Thus, the Restatement, at comment m to Sec. 402A, states that strict products liability is "similar in nature" to the absolute liability imposed upon defendants who conduct ultrahazardous or abnormally dangerous activities or who harbor dangerous animals. See also Restatement (Second) of Torts, Sec. 496A, comment d at 563. Such activities are generally not excusable on the basis of a plaintiff's ordinary contributory negligence. 3 Restatement (First) of Torts, Sections 515 and 524 [1938]. Contributory negligence is not available as a defense to those types of conduct which are not based on negligence; for the same reasons, we think it should not be available to defendants in cases where strict products liability is imposed. See Williams v. Ford Motor Co., supra 454 S.W.2d at 617; DeFelice v. Ford Motor Co., supra 255 A.2d at 638; 46 A.L.R.3d 240, 248.

Defendants contend, however, that the conduct of the plaintiff rose to the level of "assumption of risk" because the defect in her car was in plain view on the steering wheel which she sat behind every day. She therefore assumed the risk by "voluntarily and unreasonably proceeding to encounter a known danger." Carney v. Ford Motor Co., supra. To fulfill the assumption of risk test under Tennessee law, however, three requirements must be met. The plaintiff must (1) discover the defect, (2) fully understand the danger it presents to her, then (3) disregard this known danger and voluntarily expose herself to it. Rogers v. Garrett, 217 Tenn. 282, 397 S.W.2d 372 [1965]. Reasonable minds could differ as to whether these three requirements were met by plaintiff, and in such a case, the question is one for the jury to decide. Rogers v. Garrett, supra at 374; City Specialty Stores, Inc. v. Bonner, 252 F.2d 501 [6th Cir. 1958].

We are of the opinion that the defendants' liability should be limited to those injuries suffered as a result of the "second accident" only.

"Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but

the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." Larsen v. General Motors Corp., supra 391 F.2d at 503; see Keeton, "Products Liability", 50 F.R.D. 338, 348 [1970].

 This case is remanded to the Circuit Court for trial on the merits. The jury must decide, based on all the evidence, whether the design meets the test of Sec. 402A, i. e., whether the car was "in a defective condition unreasonably dangerous to the user." Olney v. Beaman Bottling Co., supra; Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 [Or.1967]; LaGorga v. Kroger Co., 275 F.Supp. 373, 378 [W.D. Pa.1967]; see 2 Frumer and Friedman, Products Liability, Sec. 16A(4) [1972].

DYER, C. J., and CHATTIN, HUMPHREYS and FONES, JJ., concur.

## OPINION ON PETITION TO REHEAR

 The appellees, Ford Motor Company and others, have filed a petition to rehear in this case, setting forth arguments that allege that this Court inadvertently misconceived the issues. We have considered the petition and find it without merit. Petitions for rehearing are governed by Rule 32 of this Court. That rule provides:

"A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked."

In Sullivan v. Harpeth Development Corp., 218 Tenn. 107, 401 S.W.2d 195 [1966], it was said:

"(T)he office of petition to rehear is to call to the attention of the Court matters overlooked; not to re-argue those things which the losing party supposes were improperly decided, after the Court has given the same full consideration. This

Court has said, and says again, that a petition for a rehearing should never be used for the purpose of re-arguing the case on the points already considered and determined; unless some new and decisive authority has been discovered, which was overlooked by this Court."

The petition to rehear is denied.